## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CRAIG COUNTY HOSPITAL | ) | Case No. 15-10277-M |
| AUTHORITY, | ) | |
| | ) | Chapter 9 |
| Debtor. | ) | |

### AMENDED[1] MOTION OF APPLIED HEALTHCARE SOLUTIONS TO WITHDRAW REFERENCE AND BRIEF IN SUPPORT THEREOF

Pursuant to 28 U.S.C. § 157, LCvR 84.1(b) and Bankr. N.D. Okla. LR 5011-1, Applied Healthcare Solutions, LLC ("AHS") hereby moves to withdraw the reference in the captioned case, at least with respect to two motions filed by Debtor Craig County Hospital Authority (the "Hospital"):

     (A)     Motion for Order Approving the Rejection of Executory Contract, Request to Set Deadline to File Claims Related to Rejected Contract and Notice of Opportunity for Hearing, filed June 22, 2015 [Dkt. No. 87] (the "Management Contract Motion"); and

     (B)     Motion for Order Approving the Rejection of Executory Contract, Request to Set Deadline to File Claims Related to Rejected Contract and Notice of Opportunity for Hearing, filed June 25, 2015 [Dkt. No. 89] (the "CBO Motion")

(collectively, the "Rejection Motions"), and the two contracts that are the subjects of the Rejection Motions (the "AHS Contracts").

In support of its Motion, AHS would show the Court:

1.     AHS is not a creditor in the captioned case (the "Hospital Bankruptcy").  It has not filed a proof of claim, or consented in any way to the jurisdiction of the Bankruptcy Court.

2.     AHS has objected to the jurisdiction of the Bankruptcy Court.  AHS filed Amended Response of Applied Healthcare Solutions, LLC to Debtor's Motions to Reject

---

[1] This brief corrects typographical errors in the original Motion to Withdraw Reference [Dkt. No. 112], adds one footnote, and substitutes the correct list of persons who receive notice by mail.  AHS has also complied with the Court Clerk's instruction to file a Civil Cover Sheet associated with this Motion to Withdraw Reference.  [Dkt. No. 115].

Executory Contracts and Objection to Subject Matter Jurisdiction [Dkt. # 116] (the "AHS Objection"), contemporaneously herewith.   AHS incorporates the AHS Objection herein by reference. The AHS Objection is verified by Terry Gunn, the Chief Executive Officer of AHS.

3.      The Bankruptcy Court recently dismissed the Hospital Bankruptcy.  *See* Order filed July 1, 2015 [Dkt. No. 92].  The order of dismissal is not final.  The Bankruptcy Court has granted the Hospital permission to file proof that it is authorized to file a Chapter 9 bankruptcy proceeding.  That proof must be filed on or before August 5, 2015.  *See* Order filed July 14, 2015 [Dkt. No 108].

4.      For the time being—until the order of dismissal becomes final—the Bankruptcy Court continues to exercise jurisdiction in the Hospital Bankruptcy.  In theory, there is a chance that the Bankruptcy Court will reverse its order of dismissal.

5.      AHS is obligated to file its motion to withdraw the reference as early as possible.

6.      The Hospital is a public trust.  As such, it is a local government and state actor for the purposes of 42 U.S.C. § 1983.  *See Hedrick v Craig General Hospital*, 2009 WL 152545 (N.D. Okla. January 21, 2009) (per Eagan, C.J.) (Case No. 08-CV-0629-CVE-TLW).  A copy of the *Hedrick* opinion is attached hereto as Exhibit A.

7.      AHS has a property interest in the AHS Contracts.  That interest is protected by the Fourteenth Amendment of the United States Constitution.  *See* AHS Objection—Part II. B.

8.      The Hospital decided to terminate the AHS Contracts without affording AHS any sort of hearing, and without waiting for the Bankruptcy Court to rule on the Rejection Motions. The decision was made by the Hospital's board of trustees and implemented by its CEO.

9.      By terminating the AHS Contracts without a hearing and without good cause, the Hospital has deprived AHS of property without due process of law. That action constitutes a

constitutional tort.  As a consequence, AHS has a claim against the Hospital under 42 U.S.C. § 1983.  *See* AHS Objection—Part II. B.

10.     The Bankruptcy Court does not have jurisdiction to adjudicate claims under 42 U.S.C. § 1983.  In particular, the Bankruptcy Court

(a)     does not have jurisdiction over the Hospital Case;[2]

(b)     does not have jurisdiction to order specific performance of the AHS Contracts, pursuant to 42 U.S.C. § 1983;

(c)     does not have jurisdiction to enter equitable or injunctive relief, pursuant to 42 U.S.C. § 1983; and

(d)     does not have jurisdiction to conduct a jury trial, pursuant to 42 U.S.C. § 1983.

*See* AHS Objection—Part I. B.

11.     In contrast, the United States District Court for the Northern District of Oklahoma has jurisdiction to adjudicate claims under 42 U.S.C. § 1983, and to award all forms of legal and equitable relief.  The District Court can conduct a jury trial.

12.     AHS is drafting a complaint asserting a Section 1983 claim against the Hospital (and perhaps others). A draft of that complaint is attached hereto as Exhibit B.

## ARGUMENTS AND AUTHORITIES

Section 157(d) of Title 28, United States Code, provides in pertinent part:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown….

---

[2] AHS believes the Hospital's failure to satisfy the requirements of § 109(c) of the Bankruptcy Code deprives this Court of subject matter jurisdiction.  AHS recognizes that some bankruptcy courts hold the debtor eligibility requirements of 11 U.S.C. § 109 are not jurisdictional.  *See, e.g. In re Hamilton Creek Metro. Dist.*, 143 F.3d 1381, 1385 (10th Cir. 1998).  According to some authorities, AHS's characterization of 11 U.S.C. § 109 as jurisdictional is a "minority" view.  *See* Howard J. Steinberg, 1 BANKRUPTCY LITIGATION § 15 (2d ed. 2007) (citing *In re Hawkins*, 340 B.R. 642, 646 (Bankr. D. D.C. 2006); *Matter of Wulf*, 62 B.R. 155, 157 (Bankr. D. Neb. 1986) overruled by *Rudd v. Laughlin*, 95 B.R. 705 (D. Neb. 1988) disapproved of by *Rudd v. Laughlin*, 866 F.2d 1040 (8th Cir. 1989)).  The characterization makes no difference, as compliance with U.S.C. § 109(c) is mandatory.

28 U.S.C. § 157(d).  *See In re Cook*, Civil No. 09-803, 2010 WL 1734737, at *3 (D.N.M. Apr. 19, 2010) ("[T]he district court has broad discretion over whether to permit withdrawal of the reference to the bankruptcy court.").

AHS seeks withdrawal of the District Court's automatic reference of the Hospital Case to the Bankruptcy Court, at least with respect to the Rejection Motions and the dispute between the Hospital and AHS regarding the AHS Contracts. See Paragraph 12, *supra.*  Factors for the Court to consider in determining whether to withdraw the reference include: "whether the claim is a core proceeding, judicial economy, convenience, the particular court's knowledge of the facts, uniformity and efficiency of bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, and whether the parties requested a jury trial." *W. Utah Copper Co. V. Bridge Loan Capital Fund, LP*, No. 2:10-CV-1039, 2011 WL 52511, at *1 (D. Utah Jan. 6, 2011); *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d. Cir. 1993) (finding same factors "relevant in evaluating cause").

Under LCvR 84.1(b)(1), motions for withdrawal of the reference of a bankruptcy proceeding

> shall be timely filed with the bankruptcy clerk,[3] shall be accompanied by the required filing fee, and shall be governed by Fed. R. Bankr. P. 5011 and 9014.  In the motion, the movant shall allege whether the proceeding is a core proceeding … or a proceeding that is otherwise related to a case under Title 11.

In prosecuting this motion, AHS has complied with all of the procedural requirements of LCvR 84.1(b)(1).

## A.  AHS'S JURY TRIAL RIGHT DICTATES WITHDRAWAL

Withdrawal of the reference is necessary to preserve AHS's right to a jury trial in a Section 1983 case.  *See Stainer v. Latimer (In re Latimer)*, 918 F.2d 136, 137 (10th Cir. 1990) (in

---

[3] Local Bankruptcy Rule 5011-1(A) is consistent, to wit:
> A motion for withdrawal of a … proceeding pursuant to Bankruptcy Rule 5011(a) and responses thereto shall be filed with the Clerk of the Bankruptcy Court.  See District Court Local Rules for provisions governing withdrawal motions.

fraudulent transfer proceeding, defendants' failure to request "transfer to the district court" [withdrawal of reference] was a waiver of the right to a jury trial).

The right to a jury trial is preserved in the Seventh Amendment:  "[I]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of a trial by jury shall be preserved.…"  U.S. CONST. AMEND. VII.  The United States Supreme Court interprets "suits at common law" to mean cases involving legal rights—as distinguished from cases based on equity.  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989).[4]

## 1. SUPREME COURT PRECEDENT

Supreme Court precedent holds that AHS's right to a jury trial under the Seventh Amendment depends on whether its claims are "legal" or "equitable" in nature.  When there is doubt as to whether a claim is legal or equitable in nature, the federal policy favoring jury decisions compels the resolution of those doubts in favor of the right to a jury trial.  *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525, 538 (1958).

To determine whether an action is "legal" or "equitable" for purposes of the Seventh Amendment, the Supreme Court has formulated a two-part test.  **First**, the Court must determine whether the action is typically brought in a court of law or equity.  *Granfinanciera*, S.A. v. Nordberg, 492 U.S. 33, 42.  **Second**, the Court must "examine the remedy sought and determine whether it is legal or equitable in nature."  *Id*.  The second factor—the nature of the remedy sought—is "more important" than the first factor.  *Id.* at 42.

AHS has not waived its jury trial right because AHS has not filed a proof of claim, or otherwise prosecuted a claim, in the case.  *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990);

---

[4] "Suits at common law" refers to "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  *Feltner v. Columbia Pictures Television, Inc*., 523 U.S. 340, 348 (1998).  The Seventh Amendment applies "not only to common-law causes of action, but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action…'"  *Id*. (quoting *Granfinanciera*, 492 U.S. at 42).

*Granfinanciera*, 492 U.S. at 58–59 & n. 14. "And, '* * * as the right of the jury trial is fundamental, courts indulge every reasonable presumption against waiver. * * *'" *Christenson v. Diversified Builders Inc.* 331 F.2d 992, 994 (10th Cir. 1964) (*quoting Aetna Ins. Co. v Kennedy*, 301 U.S. 389, 393 (1937)). *See In re Wolverine, Proctor & Schwartz, LLC*, 404 B.R. 1, 2–3 (D. Mass. 2009) (holding trial rights existed for claims under 11 U.S.C. §§ 547, 548 & 550). *And see generally Granfinanciera*, 492 U.S. 33. "Given the common core of facts, if some of the parties are entitled to a jury trial on some of the claims, it is in the interest of efficiency to withdraw the reference of the entire case." *Wolverine*, 404 B.R. at 3.

## 2.    SECTION 157(e)

Bankruptcy Courts lack authority to conduct a jury trial of AHS's claims against the Hospital. Congress has delineated limited circumstances under which a bankruptcy judge may conduct a jury trial:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(e).

Subsection (e) of 28 U.S.C. § 157 ("Section 157") sets out prerequisites for a Bankruptcy Judge to conduct a jury trial with respect to a particular claim. **First,** the subject claim must be one that may be "heard" by a bankruptcy judge pursuant to Section 157. **Second,** the bankruptcy judge must be "specially designated" by the District Court to conduct a jury trial. **Third**, all parties to the claim that is the subject of the jury demand must consent to the conducting of the jury trial by a bankruptcy judge.

By virtue of LCvR 84.1(f)(1), the District Court has "specially designated" the Bankruptcy Judges for this District to conduct jury trials "if the right to a jury trial applies in a proceeding that may be heard by a bankruptcy judge."

Despite the foregoing, a bankruptcy judge may not conduct a jury trial of the claims against the Hospital in the adversary proceeding for the reason that AHS, *inter alia*, has not consented, and does not consent, thereto.

### 3.    THE AHS CLAIMS

AHS's claims against the Hospital are based on 42 U.S.C. § 1983.  Among other things, AHS seeks a legal remedy—money damages.  Bankruptcy courts may not adjudicate Section 1983 claims, or try Section 1983 claims to a jury.

Actions for the recovery of damages, or for equitable relief, pursuant to 28 U.S.C. § 1983 are not "core proceedings" under the Bankruptcy Code, or proceedings "arising in" the Bankruptcy Code or proceedings "related to" the Bankruptcy Code.  *See In re Boyer*, 93 B.R. 313, 316-318 (Bankr. N.D. N. Y. 1988); *In re Baker*, 86 B.R. 234, 235 (D. Colo. 1988); *In re Valentine*, 357 B.R. 744, 750-51 (Bankr. E.D. Va. 2007) (holding adversary proceeding that raised, *inter alia*, civil rights claims "is a non-core proceeding, loosely related to the bankruptcy case, if at all. Absent consent by both parties to the bankruptcy court's jurisdiction, the bankruptcy court has no jurisdiction to make a final ruling on this case.").

Because AHS has a right to a jury trial that a bankruptcy judge may not conduct, withdrawal of the reference is necessary and appropriate.  *See Latimer*, 918 F.2d at 137 (10th Cir. 1990) ("[P]arties seeking a jury trial must combine their request for a jury trial with a request for transfer to the district [withdrawal of reference]."

### B.    CONSERVATION OF RESOURCES AND JUDICIAL ECONOMY DICTATES WITHDRAWAL

"[A] permissive withdrawal of the reference from the bankruptcy court is generally appropriate when the interest of judicial economy would be served or when a party has a right to a jury trial."  *In re Am. Cmty. Servs., Inc.*, 86 B.R. 681, 686 (D. Utah 1988).  *See also In re The*

*Elder-Beerman Stores Corp.,* No. 95-33643, 1997 WL 1774875, at *2 (S.D. Ohio Aug. 1, 1997) ("[T]he most important factor to consider in this particular case is judicial economy.").

Judicial economy favors withdrawing the reference immediately where the jury trial must proceed before the District Court.  "Due to the fact that a District Court judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation."  *In re Transcon Lines,* 121 B.R. 837, 838 (C.D. Cal. 1990). *See also Wolverine,* 404 B.R. at 3; *Glinka v. Abraham & Rose Co.,* No. 2:93-cv-291, 1994 WL 905714, at *12 (D. Vt. June 6, 1994) (withdrawing reference where "the instant adversary proceeding asserts both core and non-core claims and … valid jury demands are present").

Immediate withdrawal of the reference may not be practical in this case.  As noted above, the Bankruptcy Court has dismissed the Hospital Bankruptcy but the order of dismissal is not final.

## C.  THE NON-CORE ISSUES PRESENTED DICTATE WITHDRAWAL OF THE REFERENCE

The non-core issues presented by AHS's claims also warrant withdrawal.  The Tenth Circuit has held that "[a]ctions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings," whereas "[c]ore proceedings are proceedings which have no existence outside of bankruptcy."  *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir. 1990); *In re Hale-Halsell Co.,* Bankr. No. 04-11677-M, Adv. No. 04-01256-R, 2008 WL 441646, at *2 (Bankr. N.D. Okla. Feb. 14, 2008) (same).  *See also* 28 U.S.C. § 157(b)(2) (containing non-exhaustive list of core proceedings).

Placing the Section 1983 claims with the District Court in the first instance will avoid unnecessary duplication of effort by the Bankruptcy Court and District Court and reduce expense to the litigants.  *See, e.g., Orion Pictures,* 4 F.3d at 1101 ("[T]he fact that a bankruptcy court's

8

determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court.").

<u>**CONCLUSION**</u>

For the reasons stated above, and in the AHS Objection [Dkt. No. 116], AHS respectfully submits that the reference of the Hospital Bankruptcy should be withdrawn, at least with respect to the Rejection Motions and the dispute between the Hospital and AHS regarding the AHS Contracts.

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN**
**GOODNIGHT + ROBERTS**

  s/Steven K. Balman
Joseph R. Farris, OBA #2835
Steven K. Balman, OBA #492
Emily D. Jennings, OBA #31602
William Center Tower II
2 West 2nd Street, Suite 900
Tulsa, Oklahoma  74103
Tel:    918/583-7129
Fax:    918/584-3814

ATTORNEYS FOR APPLIED HEALTHCARE
SOLUTIONS, LLC

## <u>CERTIFICATE OF MAILING</u>

This is to certify that on the 24th day of July, 2015, I electronically transmitted the above and foregoing instrument for filing and for transmittal of a Notice of Electronic Filing to all ECF registrants in this case. This further certifies that on the 24th day of July 2015, the foregoing was sent via first class mail to those parties listed on the Master Service List who are not registered for ECF notice.

s/Steven K. Balman

# EXHIBIT A

Case 4:15-cv-00447-TCK-PJC   Document 3 Filed in USDC ND/OK on 08/12/15   Page 12 of 31
Case 15-10277-M   Document 117-1   Filed in USBC ND/OK on 07/24/15   Page 2 of 4

Hedrick v. Craig General Hosp., Not Reported in F.Supp.2d (2009)

2009 WL 152545

2009 WL 152545
Only the Westlaw citation is currently available.
United States District Court,
N.D. Oklahoma.

Wes HEDRICK as Special Administrator of
the Estate of John Owens, Deceased, Plaintiff,
v.
CRAIG GENERAL HOSPITAL, John
Doe, and Jane Doe, Defendants.

No. 08–CV–0629–CVE–TLW.    |    Jan. 21, 2009.

West KeySummary

**1**   **Civil Rights**
👉 Governmental Ordinance, Policy, Practice,
or Custom

The administrator of a patient's estate failed
to adequately plead a claim against a county
hospital for municipal liability under § 1983.
The administrator's claim was based on a single,
discrete act or omission of allegedly increasing
the patient's risk of serious bodily injury by
knowingly placing him in an unsupervised room
with another patient who had a known proclivity
towards homicide. The administrator had not
identified an official policy or custom that caused
the patient any harm. 42 U.S.C.A. § 1983.

Cases that cite this headnote

**Attorneys and Law Firms**

Amber Nicole Garrett, David Mitchell Garrett, Jr, Garrett
Law Office, Tulsa, OK, John Spencer Bryan, Paul Law Firm,
Tulsa, OK, for Plaintiff.

Don Williams Danz, Eric Anthony Mareshie, James Keith
Secrest, II, William Joseph Pickard, Secrest Hill & Butler,
Tulsa, OK, for Defendants.

*OPINION AND ORDER*

CLAIRE V. EAGAN, Chief Judge.

**\*1**   Now before the Court is Defendant Craig General
Hospital's Motion and Opening Brief to Dismiss Plaintiff's
Amended Complaint (Dkt.# 11). Defendant Craig General
Hospital requests dismissal of plaintiff's claim under 42
U.S.C. § 1983, because plaintiff has not alleged sufficient
facts to state a claim nor has plaintiff alleged a specific
constitutional violation.

**I.**

Plaintiff alleges that John Owens was admitted to the
psychiatric unit at Craig General Hospital ("the Hospital")
on June 10, 2006. On the morning of June 11, 2006,
Hospital staff entered the room and found that Owens was
unresponsive. Owens was declared dead later that morning.
Plaintiff alleges that a medical examiner subsequently
determined that the cause of death was "probable
asphyxiation by smothering." Dkt. # 3, Ex. 1, at 2. Plaintiff
originally filed this lawsuit as a medical malpractice claim
against the Hospital in the District Court of Craig County,
Oklahoma. The Hospital moved to dismiss on the ground that
plaintiff did not file notice of his claim with the Hospital
as required by Oklahoma's Governmental Tort Claims Act,
OKLA. STAT. tit. 51, § 151 *et seq.* Plaintiff did not respond
to the motion to dismiss and the case was dismissed without
prejudice. Dkt. # 3, Ex. 7, at 2. However, he filed a motion to
vacate the dismissal and requested leave to file an amended
complaint. *Id.,* Ex. 3. The state court granted his motion and
plaintiff filed an amended complaint on October 21, 2008.

The amended complaint omitted any allegations concerning
medical malpractice and restated plaintiff's claim as a § 1983
claim against the Hospital. He states that Owens "enjoyed
a well-established Constitutional right under the Fourteenth
Amendment to be free from acts or omissions to increase
his risk of serious bodily injury by those acting under the
color of state law...."*Id.,* Ex. 1, at 3. Plaintiff alleges that
the Hospital "confined [Owens] in an unsupervised room
with a patient known to have homicidal ideations reinforced
by an actual attempt to suffocate a prior roommate."*Id.*
According to plaintiff, the Hospital had actual knowledge
that it was placing Owens in a room with an "end-of-
life diagnosed paranoid schizophrenic with a known and
established proclivity towards homicide" but failed to protect
Owens from harm. *Id.* Plaintiff also claims that Owens'
alleged suffocation was a direct and proximate result of the

Case 4:15-cv-00447-TCK-PJC   Document 3 Filed in USDC ND/OK on 08/12/15   Page 13 of 31
Case 15-10277-M   Document 117-1   Filed in USBC ND/OK on 07/24/15   Page 3 of 4
Hedrick v. Craig General Hosp., Not Reported in F.Supp.2d (2009)

2009 WL 152545

official policies and procedures of the Hospital. On October 24, 2008, the Hospital removed the case to this Court based on federal question jurisdiction.

## II.

A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."Bell *Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. The factual allegations within the claim "must be enough to raise a right to relief above the speculative level."*Id.* (citations omitted)."Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."*Id.* at 1969.For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Id.* at 1965; *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir.2007); *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1231 (10th Cir.2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir.2001) (citations omitted)."[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."*Hall v. Bellman,* 935 F.2d 1106, 1109–10 (10th Cir.1991). In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face. *Twombly,* 127 S.Ct. at 1974.

## III.

**\*2** The Hospital asks the Court to dismiss plaintiff's amended complaint for failure to state a claim, because the amended complaint does not state sufficient facts or identify a specific constitutional violation. Plaintiff responds that his amended complaint alleges that the Hospital acted with deliberate indifference when it should have been aware of a substantial risk of harm to Owens, and he has adequately pled a "deliberate indifference" claim under the Fourteenth Amendment. Dkt. # 15, at 3.

The Tenth Circuit has held that a county hospital created as a public trust under Oklahoma law is a state actor for purposes of § 1983. [1] *Beedle v. Wilson,* 422 F.3d 1059, 1065 (10th Cir.2005). However, a county hospital is "akin to a municipality" and a claim against a county hospital must satisfy the standards applicable to § 1983 claims against municipal entities. *Id.* at 1067–68.Under § 1983, a local government or municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments can not be sued under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)."[T]o establish municipal liability, a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged."*Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir.2006). It is not enough for a plaintiff to allege that the actions of a governmental employee injured him. *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1318 (10th Cir.2002)."Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."*Seamons v. Snow,* 206 F .2d 1021, 1029 (10th Cir.2000).

Plaintiff has not adequately pled a claim for municipal liability under § 1983. Plaintiff's claim is based on a single, discrete act or omission that allegedly caused Owens' death, but he has not identified an official policy or custom that caused the decedent any harm. As currently pled, plaintiff alleges that Owens was placed in a room with person that the Hospital should have known posed a risk to Owens. Dkt. # 3, Ex. 1, at 3. The amended complaint includes the following allegations:

11. Decedent enjoyed a well-established Constitutional right under the Fourteenth Amendment to be free from acts or omissions known to increase his risk of serious bodily injury by those acting under color of state law and charged with his care and supervision.

12. Defendants deprived Decedent of his well-established Constitutional right by confining him in an unsupervised room with a patient known to have homicidal ideations reinforced by an actual attempt to suffocate a prior roommate.

13. Defendants knew the Decedent was unable to care for himself, and they further knew that confining him in an

Case 4:15-cv-00447-TCK-PJC   Document 3 Filed in USDC ND/OK on 08/12/15   Page 14 of 31

**Hedrick v. Craig General Hosp., Not Reported in F.Supp.2d (2009)**
Case 15-10277-M   Document 117-1   Filed in USBC ND/OK on 07/24/15   Page 4 of 4

2009 WL 152545

unsupervised room with a patient who had recently acted upon known homicidal ideations would increase the risk of harm to Decedent.

**\*3** 14. Despite having actual knowledge of the facts set forth above, Defendants disregarded the known risk of harm and confined Decedent in a room without supervision along with an end-of-life diagnosed paranoid schizophrenic with a known and established proclivity towards homicide.

15. As a direct and proximate result of the official policies, procedures, customs and long-standing practices at Defendant Craig General Hospital regarding training and supervision, in addition to the specific acts and omissions of the Defendant health care providers, Decedent was suffocated by his roommate.

*Id.* The amended complaint does not identify a specific Hospital policy or custom that allegedly caused Owens' death, and it is clear that the primary basis for plaintiff's claim is a one-time act or omission of the Hospital and its employees, rather than an established Hospital policy. While the events related by the amended complaint are tragic, plaintiff's claim is nothing more than an ordinary negligence claim and he does not state a claim for municipal liability under § 1983.

The Court has reviewed the amended complaint and, if plaintiff could identify a specific Hospital policy or custom, it is possible that plaintiff could state a § 1983 claim against the Hospital. Therefore, the Court finds that plaintiff should be given leave to amend before his case is dismissed with prejudice. If plaintiff chooses to file a second amended complaint, he must be clear that he is alleging that an unconstitutional policy or custom of the Hospital was the direct cause of Owens' death, not simply that Owens was harmed by the oversight or negligence of a Hospital employee.

**IT IS THEREFORE ORDERED** that Defendant Craig General Hospital's Motion and Opening Brief to Dismiss Plaintiff's Amended Complaint (Dkt.# 11) is **granted.**Plaintiff may file a second amended complaint within fifteen (15) days of this Opinion and Order **if** he can allege sufficient facts to state a § 1983 claim and clearly identify a Hospital policy or custom that allegedly caused Owens' death.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 152545

---

Footnotes

1    Both parties overlook this issue and treat plaintiff's claim as one against an individual rather than as against a municipality. Due to this misunderstanding, the Court will permit plaintiff to file a second amended complaint if he can state a claim against the Hospital.

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Applied Healthcare Solutions, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No._____ |
| | ) | |
| Craig County Hospital Authority, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DRAFT COMPLAINT

Plaintiff Applied Healthcare Solutions, LLC ("AHS") alleges and states as follows for its claims against Defendant Craig County Hospital Authority ("the Trust"):

## INTRODUCTION

This is an action for money damages and injunctive relief brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution against the Trust and the Trustees of the Trust in their individual and official capacities.

## JURISDICTION

1.       AHS is an Oklahoma LLC with its principal place of business in Tulsa, Oklahoma.

2.       The Trust is an Oklahoma public trust.

3.       The Court has original jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

4.       Venue is proper with this Court under 28 U.S.C. § 1391(b)(1) and (2), as Craig County is the sole beneficiary of the Trust, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Tulsa and Vinita.

## STATEMENT OF FACTS

2

5.      Pursuant to 60 O.S. 2011, § 178, trustees of the Trust must take the oath of office required of an elected public officer before assuming their duties as trustees of the Trust public trust.

6.      At all relevant times, the Trust and its Trustees were acting under color of law. *See Tarabishi v. McAlester Reg'l Hosp.*, 827 F.2d 648, 652 (10th Cir. 1987) (holding that, because defendant was a public trust, "its trustees are public officers acting as an agency of the State of Oklahoma").

7.      AHS was formed to provide management and billing and collections services to rural hospitals.

8.      Ownership of AHS is evenly split between Joe Gunn and Terry Gunn.  Terry is Joe's son.

9.      AHS employs eight (8) people.  All have substantial experience in CBO.  All have worked for large Tulsa hospitals in billings and collections.

10.     Ownership of AHS is evenly split between Joe Gunn and Terry Gunn.  Terry is Joe's son.

### THE MANAGEMENT CONTRACT

11.     In January 2009, AHS and the Hospital signed a second 10-year management agreement with an effective date of January 1, 2009 ("the Management Contract").      An unsigned copy of the Management Contract is attached hereto as Exhibit C.[1]   Under the Management Contract, AHS handles the daily management of the Hospital, and provides a CFO and CEO for the Hospital.

---

[1] An executed copy of the Management Contract will be provided in due course.

12.     The term of the Management Contract is ten (10) years commencing on January 1, 2009.   *See* Management Contract § 4.1.  Absent termination for some other reason, the term of the Management Agreement ends on January 1, 2019.

13.     Either party may terminate the Management Agreement after seven (7) years, with at least 180 days' written notice of intent to terminate.   *See* Management Contract § 4.2.  The seven (7) year period will not expire until January 1, 2016.  If the Hospital were to give AHS written notice of termination on January 1, 2016, the Management Contract would terminate on approximately June 30, 2016.

14.     The Management Contract identifies other events of default.   *See* Management Agreement § 4.2.  None of those events have occurred with respect to AHS.  The Hospital has not given AHS notice of any event of default.

### <u>THE CBO CONTRACT</u>

15.     On January 9, 2009, AHS and the Hospital signed a 10-year Centralized Business Office Services Agreement (the "CBO Contract").  A copy of the CBO Contract is attached hereto as Exhibit D.  Under the CBO Contract, AHS manages all billing and collections operations for the Hospital.  As used herein, "CBO" refers to the collections and billing function of the Hospital.  Under the CBO Contract, AHS performs CBO for the Hospital using its own employees and its own software.

16.     The term of the CBO Contract is ten (10) years commencing on January 1, 2009. Section 3.1 of the CBO Contract provides:

> **Term of Agreement**:  To help ensure the **continuity** and **stabilization** of the Hospital's billing and collection process, this Agreement shall commence on January 9, 2009 and shall continue for a period of ten (10) years thereafter (hereinafter referred to as the "Term").

CBO Contract § 3.1 (emphasis added).  Absent termination for some other reason, the term of the CBO Agreement ends on January 1, 2019.

17.     Either party may terminate the CBO Agreement after three (3) years, with at least 180 days' written notice of intent to terminate.  *See* CBO Contract § 4.2.  The Hospital has not given AHS the 180 day written notice required to terminate the CBO contract.

18.     The CBO Contract identifies other events of default.  *See* CBO Agreement § 3.2. None of those events have occurred with respect to AHS.  The Hospital has not given AHS notice of any event of default.

19.     In September 2013, Trust CFO Bob Lutz presented a report on billing to the Board of Directors for the Trust (the "Trust Board"), attached hereto as Exhibit C.  The report noted that the Vinita workforce lacked sufficient individuals with the expertise needed to work in the Trust Business Office and perform the CBO functions.  The report projected that, even given five years to train new employees and set up an in-house billing system, in-house billing would be more expensive than using AHS.

20.     In 2014, AHS's total collection fees were approximately 3.4% of cash collections, which compares favorably to national trends for smaller facilities such as the Trust.  AHS's collection performance metrics were roughly twice as favorable as what the Trust was generating on its own before it engaged AHS.

21.     Despite AHS's favorable performance, Trust CEO Herb Crum ("Crum") began contacting alternate vendors regarding CBO in December 2014.  Crum's conduct is discussed in emails between Steven Chase and Terry Gunn.  Copies of these emails are attached hereto as Exhibit D.

22.     On January 29, 2015, the Trust Board received a letter opinion from Richard D. Wagner, CPA, FHFMA regarding the Trust's eligibility for Chapter 9 bankruptcy (the "Wagner Letter").  A copy of the Wagner Letter is attached hereto as Exhibit E.   In the Wagner Letter, Wagner stated, "I am not sure you are insolvent at the time if you are meeting your other debt requirements?" *Id.*

23.     Even though it was solvent, the Trust filed a voluntary bankruptcy petition under Chapter 9 on February 25, 2015 and commenced the Trust Bankruptcy.

24.     Based on the Wagner Letter and AHS's own information regarding the Trust's cashflows, AHS believes the Trust was not insolvent at the time it filed for bankruptcy.  As a consequence, the decision of the Trust Board to commence the Trust Bankruptcy (a) was not a valid exercise of business judgment and (b) not appropriate under 11 U.S.C. § 109(c)(3) (insolvency requirement for Chapter 9 bankruptcies). As a general matter, the Trust did not satisfy the requirements of 11 U.S.C. § 109(c) (conditions that an entity must satisfy to be a debtor under Chapter 9 of the Bankruptcy Code).

25.     On information and belief, the Trust Bankruptcy was filed only to facilitate and streamline breach of the AHS Contracts, as well as the Trust's contract with the Oklahoma Public Employees Retirement System ("OPERS"), leaving these two entities with unsecured claims that will be paid pro rata.  On information and belief, the Trust is attempting to avoid full payment of damages, as would be required if the Trust breached the contracts and were sued by AHS and OPERS.

26.     On February 9, 2015, Terry Gunn emailed Crum a proposal whereby AHS could transfer the CBO to the Trust (the "Transfer Proposal") in return for reasonable consideration.  A copy of the Transfer Proposal is attached hereto as Exhibit F.   In particular, the Transfer

Proposal provided that the Trust would pay AHS $250,000 in 25 equal installments over 25 months at 0% interest.

27.     The Trust Board never responded to the Transfer Proposal.  Instead, the Trust Board initiated a scheme and plan to obtain the CBO without compensating AHS.  The Trust failed to act in good faith.

28.     On June 12, 2015, the Board unanimously voted to reject both the CBO and Management Contracts in the bankruptcy action.  A copy of the June 4, 2015 Board Minutes is attached hereto as Exhibit G.

29.     The Trust currently owes AHS $32,725.06 for management services.  *See* AHS Invoice, attached hereto as Exhibit H.  Half that amount—$16,362.53—is already past due. Payroll is due this Wednesday, July 15, 2015.  *See* Terry Gunn Email Re: Payroll, attached hereto as Exhibit I.

30.     On June 19, 2015, CBO Manager Codi Ashinhurst informed Terry Gunn that AHS employees had directly shared administrative user information for Medicaid with hospital employee Dana Scott in response to a request from Crum.  No similar request had ever been made by the Trust in the past.

31.     Codi Ashinhurst also informed Terry Gunn that the AHS employee in charge of billing—the biller—had detected an account for "Mickey Mouse" in the system and deleted it from the billing file.  AHS employees then discovered the Trust had registered two "test" accounts with notes "ADDED MEDICARE TO ACCT FOR TESTING.DLS" & "ADDED CHARGES TO ACCOUNT.  TO TEST PRO FEE BILLING.DLS."  Codi Ashinhurst did not know what the Trust might be testing.  The Trust's tests of AHS systems, like Crum's request for administrative user information, were irregular and unprecedented.

32.     Upon information and belief, the test accounts were created by the Trust to obtain information required to take over the CBO without the knowledge, consent or approval of AHS, and without paying compensation to AHS for CBO.

33.     On June 22, 2015, the Trust filed a motion to reject the Management Contract with AHS [Dkt. # 87].

34.     On June 25, 2015, the Trust filed a motion to reject the CBO Contract [Dkt. # 89].

35.     The Court has not yet ruled upon the Trust's two motions to reject.  By order of the Court, the deadline for AHS to respond to the Trust's motions to reject is July 31, 2015. [Dkt. # 89].

36.     On June 26, 2015, AHS noticed that Crum and Angela Johnson (Controller for the Trust) had been added to the recipient list for the bank lockbox the Trust uses to process mail and send AHS the PDF files of daily deposits.   Under the procedure currently in place—that is, the procedure established and administered by AHS—AHS prints, sorts, and posts the cash after the PDF files of daily deposits are received.  Upon information and belief, the Trust changed this procedure in order to facilitate and streamline a shift of CBO from AHS to the Trust.

37.     On the same day—June 26, 2015—AHS also noticed that certain remittances— the Tricare remits—were being sent to the Trust instead of directly to AHS for processing.  The redirection of the Tricare remits was part of a pattern of remittance redirection:  Earlier in June, the Medicare and Medicaid remits had been redirected to the Trust.

38.     In response to these actions, counsel for AHS (Steven K. Balman) sent a letter to counsel for the Trust on June 26, 2015, (the "Balman Letter") noting that the Court had not yet ruled on the Trust's motions to reject the CBO Contract and the Management Contract, and AHS

warned that any failure of the Trust to perform its obligations under the AHS contracts would constitute a breach of these contracts.

39.     The Trust never responded to the portions of the Balman Letter that warned the Trust not to breach the AHS contracts.

40.     One or more members of the Trust Board, and one or more lawyers for the Trust, are aware of the importance and significance to AHS of the Management Contract and the CBO Contract.  At all relevant times, those persons knew that loss of these contracts would make it difficult for AHS to make payroll and service its debt.

41.     On July 1, 2015 the Court entered an order dismissing the bankruptcy pursuant to a Motion to Dismiss filed by OPERS.  [Dkt. # 92].  The Court stayed the dismissal order, however, and granted the Trust until July 31, 2015 to file a motion seeking alternate authorization to file bankruptcy under 11 U.S.C. § 109(c)(2).  *Id.*

42.     On July 7, 2015, Crum spoke with Joe and Terry Gunn.  Crum told the Gunns that the Trust Board had voted not to make payments on the AHS Management Contract, effective immediately.  Crum also stated the Trust was prepared to take CBO in-house as soon as possible. Crum said he intended to talk directly to AHS staff on Thursday, July 9, 2015, and to begin obtaining the information and access required to take over collections and billing.  This action was apparently delayed, but on July 13, 2015, Crum again contacted AHS and spoke with employees Donna Thrasher and Codi Ashinhurst.  Crum informed them that the transition would go forward on Thursday and Friday, July 16 and 17, 2015, and he requested that AHS employees be prepared to work with the Trust's people on-site to assist in the transition of CBO to the Trust.

43.     When Terry Gunn asked Crum whether the contracts were being terminated for performance issues, Crum could not give an answer.  AHS has performed its obligations under

the contracts.  The Trust Board's decision to terminate the contracts is not a valid exercise of business judgment.

### FIRST CLAIM FOR RELIEF: DUE PROCESS VIOLATION UNDER § 1983

44.     AHS incorporates Paragraphs 1 through 29 above.

45.     On January 1, 2009, AHS and the Trust executed the CBO Contract and the Management Contract.  Both contracts remain in force.

46.     Under the Management Contract, AHS is paid for managing the Trust and obtaining replacement CEOs and CFOs.

47.     Under the CBO Contract, AHS performs CBO functions for the Trust.  AHS performs its contractual duties using its own personnel and software.

48.     The term of the CBO and Management Contracts is 10 years.

49.     A termination provision in the Management Contract states "after this Agreement has been in effect for at least seven (7) years, either party may terminate this Agreement at any time without cause by giving the other at least one hundred eighty (180) days prior written notice of its intent to so terminate."  In addition, the Management Contract could be terminated for cause under one of three subsections.

50.     The CBO Contract termination provision stated that "after this Agreement has been in effect for at least three (3) years, either party may terminate this Agreement at any time without cause by giving the other party at least one hundred eighty (180) days prior written notice of its intent to so terminate."  The CBO Contract could also be terminated for cause under three subsections.

51.     On July 7, 2015, the Trust informed AHS that it was terminating both contracts.

52.     AHS has a property right in its Management and CBO Contracts.  This right is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Contracts therefore cannot be terminated without cause until seven (7) years from execution of the Management Contract and three (3) years from execution of the CBO Contract.  *See Computer Sciences Corp. v. Ibarra*, 685 F. Supp. 748, 754 (D. Colo. 1988) (holding plaintiff had a property right in its contract to provide state Medicare information services, where contract lasted for a specified period and could be terminated only for cause); *APMC, Inc. v. Fogarty*, No. CIV-08-249-L, 2008 WL 4279780, at *3 (W.D. Okla. Sept. 12, 2008) (holding medical supplier had pled a § 1983 claim by alleging a property right to payment for Medicaid services performed under contract with Oklahoma Health Care Authority); *Slavens v. Millard Cnty.*, No. 2:11-CV-00568, 2013 WL 5308105, at *5 (D. Utah Sept. 20, 2013) (holding public defender with a series of two-year contracts for provision of legal defense services to indigent defendants had a property right under § 1983, and therefore his contract could not be terminated before the two years had expired unless contractual review process was followed).

53.     The Trust was a state actor at all relevant times.

54.     As a result of the Trust's due process violation, AHS has suffered and will continue to suffer actual damages.

55.     AHS will also suffer consequential damages from the Trust's violation of its rights, including difficulty making payroll and servicing loans.

56.     One or more of the Trust's lawyers knew that consequential damages would result form the Trust's breach.  The Trust's lawyers are agents of the Trust.  Their knowledge is attributable to the Trust.

57.     Other persons on the Trust Board are familiar with the financial condition of AHS, and the dependence of AHS upon its contracts with the Trust.  An officer of one of AHS's lenders sits on the Trust Board.

58.     The Trust's deprivation of AHS property was carried out by members of the Board of Trustees, acting as state officials with final policy making authority with respect to the Contracts.

## SECOND CLAIM FOR RELIEF: INJUNCTIVE RELIEF

59.     AHS incorporates Paragraphs 1 through 44 above.

60.     Injunctive relief is necessary to prevent the Trust from continuing to violate AHS's property right in its CBO and Management Contracts.

61.     AHS will suffer irreparable injury unless an injunction issues.

62.     The threatened injury to AHS outweighs any harm the injunctive relief may cause the Trust.

63.     Injunctive relief would not be adverse to the public interest.

64.     There is a substantial likelihood that AHS will prevail on the merits of its claim for relief under 42 U.S.C. § 1983.

65.     A separate application for injunctive relief has been filed contemporaneously herewith.

## THIRD CLAIM FOR RELIEF: SPECIFIC PERFORMANCE

66.     AHS incorporates Paragraphs 1 through 65 above.

67.     Monetary damages alone are not an adequate remedy for the Hospital's misconduct.

68.     AHS is entitled to the remedy of specific performance of the Management Contract and the CBO Contract.

**WHEREFORE**, Plaintiff Applied Healthcare Solutions, LLC prays for judgment against Defendant Craig County Hospital Authority for damages, attorney's fees, specific performance, injunctive relief, and all other just and equitable relief as the Court deems proper.

Respectfully submitted,

**FRANDEN | FARRIS | QUILLIN
  GOODNIGHT + ROBERTS**

_____
Joseph R. Farris, OBA #2835
Steven K. Balman, OBA #492
Emily D. Jennings, OBA #31602
William Center Tower II
2 West 2nd Street, Suite 900
Tulsa, Oklahoma  74103
Tel:    918/583-7129
Fax:    918/584-3814

ATTORNEYS FOR CREDITOR/PLAINTIFF
APPLIED HEALTHCARE SOLUTIONS, LLC

**VERIFICATION**

STATE OF SOUTH CAROLINA   )
                                            ) ss.
COUNTY OF _____   )

       I, Terry Gunn, of lawful age, being first duly sworn upon oath, state that I have read the above and foregoing Complaint, that I am familiar with the contents thereof, and that the facts set forth therein are true and correct to the best of my knowledge and belief.

                                          _____
                                          Terry Gunn

       Subscribed and sworn to before me, a notary public, on this ____ day of July, 2015.

                                          _____
                                          Notary Public

                                        _____
                                        Commission No.

                                        _____
                                        Commission Expiration Date

14

## <u>CERTIFICATE OF MAILING</u>

This is to certify that on the ___ day of July, 2015, I electronically transmitted the above and foregoing instrument for filing and for transmittal of a Notice of Electronic Filing to all ECF registrants in this case. This further certifies that on the 10th day of July 2015, the foregoing was sent via first class mail to those parties listed on the attached notice list who are not registered for ECF notice.

_____

AMERICAN RED CROSS
P O BOX 730040
DALLAS, TX 75373-0040

ARTHREX
PO BOX 403511
ATLANTA, GA 30384-3511

BASIC MRI MEDICAL SY
1410 RACHAEL LANE
WATERLOO, IL 62298

Ben E. Keith Co.
Attn Debbie Sparks
P O Box 8170
Edmond, OK 73083

BRACCO DIAGNOSTICS I
259 PROSPECT PLAINS RD
BUILDING H
CHARLOTTE, NC 28290-2411

EHR Hitech Incentive Payment Center
P O Box 809338
Chicago, IL 60680-9338

EIDE BAILLY, LLP
1601 N.W. EXPRESSWAY
SUITE 1900
OKLAHOMA CITY, OK 73118

J. Bill Koehler
6202 S. Lewis, Ste F
Tulsa, OK 74136

LABORATORY SUPPLY CO
P.O. BOX 9289
DALLAS, TX 75267

MCINTOSH SERVICES, I
PO BOX 472208
TULSA, OK 74147-2208

MEDHOST OF TENNESSEE
2739 MOMENTON PLACE
CHICAGO, IL 60689-5327

NEO ORTHOPEDICS & RE
2225 North Main Street
Miami, OK 74354-1620

OLYMPUS FINANCIAL SE
P.O. BOX 200183
PITTSBURGH, PA 15251-0183

OWENS & MINOR 425160
PO BOX 841420
DALLAS, TX 75284-1420

RESPIRONICS
P.O. BOX 640817
ATLANTA, GA 30384-5740

SAINT FRANCIS HOSPIT
SLEEP DISORDERS
6600 S. YALE AVE., SUTIE
TULSA, OK 74136

TAG Consulting
11320 Random Hills Rd Ste 150
Fairfax, VA 22030

Tom McGeady
Logan & Lowry
P O Box 558
Vinita, OK 74301

Toshiba America Medical
P O Box 91605
Chicago, IL 60693

U.S. FOODSERVICE, IN
P.O. BO 14698
DALLAS, TX 75397-3118

WERFEN USA, LLC
PO BOX 347934
PITTSBURG, PA 15251-4934