IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| CRAIG COUNTY HOSPITAL ) | Case No.  15-10277-M |
| AUTHORITY, ) | |
| ) | Chapter 9 |
| ) | |
| Debtor. ) | |

**DEBTOR'S RESPONSE AND OBJECTION TO MOTION OF**
**APPLIED HEALTHCARE SOLUTIONS TO WITHDRAW REFERENCE**

Debtor, Craig County Hospital Authority ("Debtor"), objects to the Motion to Withdraw Reference [Dkt. No. 112] (the "Withdrawal Motion") filed by Applied Healthcare Solutions ("AHS").  The matters which AHS seeks to withdraw are as follows:

1. Motion for Order Approving the Rejection of Executory Contract, Request to Set Deadline to File Claims Related to Rejected Contract and Notice of Opportunity for Hearing filed on June 22, 2015 (the "Motion to Reject the AHS Management Agreement ")[Dkt. No. 87]; and

2. Motion for Order Approving the Rejection of Executory Contract, Request to Set Deadline to File Claims Related to Rejected Contract and Notice of Opportunity for Hearing filed on June 25, 2015 (the " Motion to Reject the AHS Centralized Business Office Services Agreement") [Dkt. No. 89] (collectively, the "Rejection Motions").

3. The Withdrawal Motion should be denied where: (1) pursuant to 11 U.S.C. § 365, it is within Debtor's business judgment, subject to this Court's approval, to determine whether or not to assume or reject executory contracts; (2) the rejection of an executory contract is a core proceeding the process for which does not exist outside the

1

Bankruptcy Code and should be heard by this Bankruptcy Court; (3) AHS' so-called claim under 42 U.S.C. § 1983 is wholly without merit.  In support, Debtor states as follows:

## RELEVANT BACKGROUND

4. On February 25, 2015 (the "Petition Date"), Debtor filed a Voluntary Petition (the "Petition") for Chapter 9 bankruptcy in the United States Bankruptcy Court for the Northern District of Oklahoma.

5. On June 22, 2015, Debtor, after determining in its business judgment that it does not need to continue under the AHS Management Agreement (the "Management Agreement"), filed its Motion to Reject the AHS Management Agreement [Dkt. No. 87].

6. On June 25, 2015, Debtor, after determining in its business judgment that it does not need to continue under the AHS Centralized Business Office Services Agreement (the "CBOS Agreement"), filed its Motion to Reject the AHS Management Agreement [Dkt. No. 87].

7. On July 1, 2015, this Court held a telephonic bench ruling at which time the Court dismissed the case on the basis that Debtor did not qualify for Chapter 9 bankruptcy. *See* Order Dismissing Case [Dkt. No. 92].  However, the Court stayed the enforcement of the Order Dismissing Case for a period of 30 days to allow the Debtor the opportunity to provide alternate authorization to allow it to file for Chapter 9 relief in accordance with 11 U.S.C. § 109(c)(2). On July 31, 2015 [Doc. 125] this Court entered an Order extending the stay of the Order Dismissing the Case until August 31, 2015 (the "Extension Order). The Extension Order further provides that Debtor may file a motion

for the Court to consider alternate authorization under 11 U.S.C. § 109(c)(2) (the "Authority Motion") on or before August 30, 2015 and upon filing the Authority Motion that the stay will be further extended pending a ruling on that motion.

8.  The Debtor intends to timely file the Authority Motion and based on information currently available, is reasonably confident the same will result in the entry of an Order for Relief. Until such time, this Court has specifically retained jurisdiction over these matters in accordance with the stay of the enforcement of the Order Dismissing Case.

9.  On July 21, 2015, AHS filed its Response to Debtor's Motions to Reject Executory Contracts and Objection to Subject Matter Jurisdiction. [Dkt. No. 111] along with its Motion to Withdraw Reference and Brief in Support Thereof [Dkt. No. 112].

10. In accordance with the Local Rules of the Northern District of Oklahoma, LCvR84.1(b), Bankr. N.D. Okla. LR 5011-1, Fed. R. Bankr. P. 5011, and 28 U.S.C. 157(b)(3), this Court should enter an Order determining that the Rejection Motions are core proceedings and recommend to the District Court that this Bankruptcy Court retain jurisdiction over the Rejection Motions.

**ARGUMENTS AND AUTHORITIES**

I.  **PURSUANT TO 11 U.S.C. § 365, THE CBOS AGREEMENT AND THE MANAGEMENT AGREEMENT ARE EXECUTORY CONTRACTS AND ARE SUBJECT TO REJECTION IN THE BUSINESS JUDGMENT OF DEBTOR.**

11. A contract is considered executory when the obligations of the parties thereunder are "so far underperformed that the failure of either to complete performance

3

would constitute a material breach excusing the performance of the other." *Olah v. Baird* (*In re Baird*) 567 F.3d 1207, 1210-11 (adopting the definition of executory contract developed by Vern Countryman, *Executory Contracts in Bankruptcy: Part 1*, 57 Minn. L. Rev. 439, 460 (1973)).

12. AHS does not claim the Management and the CBOS Agreements (collectively the "Contracts") are executory. AHS, however, refuses to recognize the effect of 11 U.S.C. § 365 on executory contracts within a bankruptcy proceeding. Pursuant to §365, the powers of a debtor in a Chapter 9 case includes the power to reject executory contracts. *In re City of Cent. Falls, R.I.*, 468 B.R. 36, 45 (Bankr. D.R.I. 2012). The decision to reject an executory is within the debtor's "business judgment." *Matter of Tilco, Inc.*, 58 F.2d 1369, 1372 (10th Cir. 1977) (cited with approval in *NLRB v. Bildiscco & Bildisco*, 465 U.S. 513,523 (1984); *see also Grp. of Insitutional Investors v. Chicago M., St. P. & P. R. Co.,* 318 U.S. 523, 550 (1943) ("Thus, the question whether a lease should be rejected and if not on what terms it should be assumed is one of business judgment").

13. "As generally formulated and applied in corporate litigation the rule is that courts should defer to-should not interfere with-decisions of corporate directors upon matters entrusted to their business judgment except upon a finding of bad faith or gross abuse of their 'business discretion.'" *See Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1047 (4th Cir. 1985) (citing *Lewis v. Anderson*, 615 F.2d 778, 782 (9th Cir.1979); *Polin v. Conductron Corp.*, 552 F.2d 797, 809 (8th Cir.1977)). "Transposed to the bankruptcy context, the rule as applied to a bankrupt's decision to

4

reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion." *Lubrizol Enterprises, Inc.*, 756 F.2d at 1047. This standard has stood the test of time. *See Blackstone Potato Chip Co., Inc. v. Mr. Popper, Inc. (In re Blackstone Potato Chip Co., Inc.),* 109 B.R. 557, 559 (Bankr.D.R.I.1990) (" 'business judgment test' is the proper standard to be applied in considering a debtor's motion to accept or reject and executory contract"); *In re A.J. Lane & Co., Inc.,* 107 B.R. 435, 440 (Bankr.D.Mass.1989) ("[T]he weight of authority under the Code applies the business judgment standard in preference either to a balancing of the equities approach or one requiring a showing that performance of the contract is burdensome to the debtor."); *In re Instituto Medico Del Norte, Inc.,* 76 B.R. 14, 15 (Bankr.D.P.R.1987), ("decision to reject a contract is based on the 'business judgment' rule"); *In re Leroux*, 92-20403-WCH, 1997 WL 375677, at *8 (Bankr. D. Mass. June 30, 1997).

14. Indeed, the Tenth Circuit adopted the same approach in *Matter of Till*, supra. as has the Ninth Circuit *In re Pomona Valley Med. Grp., Inc.,* 476 F.3d 665, 670 (9th Cir. 2007 citing *Lubrizol Enterprises, Inc.*, supra at 1047. ("However, courts are no more equipped to make subjective business decisions for insolvent business than they are for solvent businesses, so we have no difficulty concluding that its formulation in corporate litigation is also appropriate here."). "Generally, the Court should not interfere with the debtor in possession's exercise of business judgment to reject a lease or executory contract unless the decision is 'so manifestly unreasonable that it could not be

5

based on sound business judgment[.]'" *In re W. Wood Products, Inc.*, 2013 WL 1386285, at *21 (Bankr. D.N.M. Apr. 4, 2013) (quoting *Lubrizol,* 756 F.2d at 1047).

15. Here, Debtor, in an appropriate exercise of its business judgment, determined that the Contracts should be rejected. As discussed in detail in section III below, any claim that Debtor's decision to reject amounts to a claim under 42 U.S.C. § 1983 flies in the face of the Debtor's rights under 11 U.S.C. § 365 and fails to recognize the adjustment of the parties rights and obligations under the Bankruptcy Code.

## II. THE REJECTION OF AN EXECUTORY CONTRACT IS A CORE PROCEEDING THE PROCESS FOR WHICH DOES NOT EXIST OUTSIDE THE BANKRUPTCY CODE AND SHOULD BE HEARD BY THIS BANKRUPTCY COURT.

16. The district court may withdraw a matter "for cause shown." *See* 28 U.S.C. § 157(d). In determining whether cause exists sufficient to justify permissive withdrawal of a case, the primary consideration to be made by the court is whether the case is a core or non-core proceeding. *See Trustees of the United Mine Workers of America Combined Benefit Fund v. Westmoreland Coal Co., et al.* (*In re Westmoreland Coal Co., et al.*) 221 B.R. 512, 514-15 (D. Colo. Bankr. 1998) (*citing Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*) 4 F.3d 1095, 1101 (2d Cir. 1993); *Hale - Halsell Company v. Creditors Union State Bank & Trust, et al.*, 2008 WL 802992, *2, Case No. 08-CV-0089-CVE-PJC (N.D. Okla., March 20, 2008; *Miller v. Pierce*, 2009 WL 919441, *1, Case No. 08-08039-M (E.D. Okla., March 31, 2009) (permitting withdrawal of only those claims that were non-core and leaving the core claim before the bankruptcy court). Claims constituting core proceedings should remain before the

6

bankruptcy court as the interests of the parties and the public are best served "if the determination is made by a judge whose particular expertise will ensure the correct result." *Westmoreland*, 221 B.R. at 515.

17. Among the various actions considered "core", Section 157(b)(2)(O), provides that "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claim" are considered core proceedings. *See* 11 U.S.C. § 157(b)(2)(O). "Further, rejection of "executory contracts are fundamental issues of bankruptcy law unique to the Bankruptcy Code," and thus challenges to the effects of rejection orders are core proceedings because they are claims that would not exist independent of the bankruptcy case. *In re DBSI, Inc.,* 409 B.R. at 728; *see NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to [*sic*] a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.")." *In re Great Atl. & Pac. Tea Co., Inc.,* 467 B.R. 44, 58 (S.D.N.Y. 2012) aff'd sub nom. *Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co., Inc.,* 508 Fed. Appx. 63 (2d Cir. 2013). There is no question the Rejection Motions are core proceedings.

18. AHS attempts to manufacture a jury trial right by injecting the civil rights claims into the routine rejection motions under §365 and then claiming that such requires withdrawal of the reference. AHS cites no authority for a jury trial right on the rather narrow issues under §365. Similar efforts were found to have no legal basis primarily

7

because the "fundamental nature and purpose" of a motion under §365 "should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *In re Orion Pictures Corp.,* supra. at page 1098-99. There is no right to a jury trial on any of the issues presented in the Rejection Motion and indeed, AHS does not even claim such.

19.     Here, as set forth by AHS in its Withdrawal Motion, it has moved to withdraw the Rejection Motions and the two contracts that are the subjects of the Rejection Motions. *See* Withdrawal Motion at p.1.  AHS' Withdrawal Motion must be denied where proceedings to reject or assume contracts are core proceedings. *See e.g. In re Great Atlnatic & Pacific Tea Co., Inc.*, supra. and *In re City of Cent. Falls. R.I.*, 468 B.R. 36.  Rejection of an executory contract raises "fundamental issues of bankruptcy law unique to the Bankruptcy Code" and claims related to such process do not exist independent of the bankruptcy case. *Republic Underwriters Ins. Co. V. DBSI Republic, LLC (In re DBSI)*, 409 B.R. 720, 728 (Bankr. D. Del. 2009); *Bildisco*, 465 U.S. at 528; *In re Great Atlantic & Pacific Tea Co., Inc.,* 467 B.R. at 58.  Proceedings to reject or assume constitute core proceedings under 11 U.S.C. § 157(b)(2)(O), because they affect the adjustment of the debtor-creditor relationship.  *See also* detailed discussions of withdrawal of reference in the context of §365 motion to reject or assume executory contracts in the following cases: *Harley Hotels, Inc. v. Rain's Int'l, Ltd.,* 57 B.R. 773, 784 (M.D. Pa. 1985) ("Motion to Assume Executory Contract is a core proceeding which,

8

furthermore, should be decided by the bankruptcy court in the interest of sound judicial administration and expedient disposition of all the claims concerning the debtor's estate.."), *Matter of Hawkeye Chem. Co.,* 73 B.R. 318, 321 (Bankr. S.D. Iowa 1987) ("…legislative history indicated that the language of section 157(d) should be read very narrowly to prevent section 157(d) from becoming "an escape hatch through which most bankruptcy matters will be removed to a district court.") and *In re OCA, Inc.,* 2006 WL 4029578, at *4 (E.D. La. Sept. 19, 2006) (holding that motions under §365 are "a substantive right" so that "resolving whether the contracts are executory and whether they can be assumed is a core function of the Bankruptcy Court").

20.  AHS' claims related to Debtor's Rejection Motions and related conduct are core proceedings as the matters which AHS seeks to withdraw arise solely out of Debtor's exercise of power under 11.U.S.C. §365, a right which only exists under the Bankruptcy Code.  *See* 11 U.S.C.§ § 365, 157(b)(2)(O), 157(d).  Consequently, the primary consideration (that this is a core proceeding) warrants denial of AHS' Withdrawal Motion and indicates the entirety of this case should remain before this Bankruptcy Court.

### III. ANY PURPORTED CLAIM UNDER 42 U.S.C. § 1983 IS WHOLLY WITHOUT MERIT

21.  AHS attempts to circumvent the application of 11 U.S.C. § 365 to the Contracts by disguising its unjustified objection to the rejection of the agreements as an independent claim under 42 U.S.C. § 1983.  AHS appears to be complaining that Debtor stopped performing under the Contracts prior to the Court's approval of the Rejection

9

Motions. *See* Withdrawal Motion at ¶¶ 8-9; *see also* Response of Applied Healthcare Solutions, LLC to Debtor's Motions to Reject Executory Contracts and Objection to Subject Matter Jurisdiction at ¶¶ 54-57 [Dkt. No. 111] (the "AHS Objection"). AHS then argues that the failure of Debtor to perform under the Contracts prior to the Court's approval of the Rejection Moments constitutes a violation of AHS' property rights alleging that the termination of the agreements without a hearing and without good cause amounts to a deprivation of the property of AHS without due process of law. *See* Withdrawal Motion at ¶ 9.

A. <u>Debtor is Excused From Performance Under the Contracts.</u>

22. As set forth by AHS in the Withdrawal Motion, the alleged gradual termination occurred long after the filing of the Petition Date. See AHS Objection at ¶¶ 41-57. Case law makes clear that such action is entirely appropriate. Indeed, during the period between the filing of the petition for bankruptcy relief and the assumption or rejection of an executory contract under § 365, such contract remains in existence but is only enforceable by the debtor but not against the debtor. *See Bildisco*, 465 U.S. at 532; *U.S. Postal Serv. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 624 (8th Cir. 1994); *In re Calpine Corp.*, 2009 WL 1578282, *6 , Adv. No. 08-1251 (Bankr. S.D.N.Y. May 7, 2009) Furthermore, a debtor is relieved of any post-petition obligation under an executory contract during this gap period. *In re Patient Educ. Media, Inc.,* 221 B.R. 97, 101 n. 4 (Bankr.S.D.N.Y.1998) ("Generally, the debtor in possession is not required to perform [postpetition obligations under an executory contract] prior to assumption.")

10

(internal citations omitted)); *In re El Paso Refinery, L.P.,* 196 B.R. 58, 72 (Bankr.W.D.Tex.1996).

23. Consequently, Debtor is excused from performance under the Contracts during the gap period between the filing of the petition and the entry of an order granting the Rejections Motions. AHS cites no authority for its proposition that the Debtor was obligated to perform the Contracts until such time as this Court grants the Rejection Motions. The failure of this central pillar causes the entire foundation of the majority of the arguments presented by AHS to fail.

24. AHS is not wholly without a remedy. Rejection of an executory contract equates to a breach of contract, for which damages may be sought. *Landsing Diversified Properties-II v. First Nat'l Bank and Trust Co. of Tulsa* (*In re Western Real Estate Fund, Inc.*) 922 F.2d 592, 598 (10th Cir. 1990); *see also In re Travelot Co.,* 286 B.R. 462, 466 (Bankr.S.D.Ga.2002) and *Bildisco* 465 U.S. at 531 (stating that where a debtor decides to receive the benefits of an executory contract during the gap period, it must pay for the reasonable value of those services).

B. <u>AHS Has Been Afforded its Due Process Rights.</u>

25. AHS argues that the contracts were terminated without hearing and without good cause. *See* Withdrawal Motion at ¶¶ 8-9. Ironically, simultaneously with the filing of its Withdrawal Motion, AHS also filed the AHS Objection exercising the very due process it complains it was not afforded. As set forth above, any complaint regarding Debtor's failure to perform during the gap period is without merit and, to the extent applicable, AHS may have other remedies it can pursue for any benefit it alleges it

11

conferred on Debtor during the gap period.  Indeed, the Debtor has paid AHS under the terms of the CBOS Agreement plus an additional $90,000 under the Management Agreement, therefore AHS has actually received post-petition payments that exceed the value of any benefits it has bestowed upon the Debtor post-petition.

26. Furthermore, the standard under which Debtor's decision to reject executory contracts is to be evaluated is not "good cause" as AHS argues without any legal basis, but is "business judgment." *See Matter of Tilco, Inc.*, 58 F.2d at 1372; *Bildisco,* 465 U.S. at 523; *see also Grp. of Institutional Investors,* 318 U.S. at 550.

27. AHS's claim under § 1983 is a poorly veiled attempt to circumvent the process for rejection of executory contracts and should be denied.  Debtor has properly exercised its business judgment in determining to reject the Contracts, the process for which is within this Court's core jurisdiction.

C. <u>Any action by AHS for damages is a violation of the stay.</u>

28. AHS seeks to withdraw the reference so that it can file a civil rights action in District Court.  The proposed civil rights action is nothing more than a disguised breach of contract action because all of the operative facts and conduct upon which AHS basis its claims arise from the Contracts.  In reality, AHS seeks to withdraw the reference so that it can sue the Debtor for damages arising from the Contracts regardless of the fact that the claim is cast as a civil rights action.  Such actions are a violation of the stay.

29. "Even though the act of rejection takes place after the date of the bankruptcy filing, the breach (with certain exceptions) is treated as occurring on the date of the bankruptcy filing. *Id.* As a result, any claim for damages flowing from the breach

12

is treated as a prepetition claim." *In re Park,* 275 B.R. 253, 256 (Bankr. E.D. Va. 2002). As such, "the claims are stayed by the automatic stay." *In re Great Atl. & Pac. Tea Co., Inc.,* 467 B.R. 44, 51 (S.D.N.Y. 2012) aff'd sub nom. *Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co., Inc.,* 508 Fed. Appx. 63 (2d Cir. 2013). The fact that Debtor has elected to cease performance of the Contracts post-petition does not render the proposed civil rights action a post-petition claim because the breach of the Contracts is deemed to have occurred prepetition.

30. This Court should not grant the Withdrawal Motion when the stated purpose for the relief requested will violate the stay.

## **CONCLUSION**

The Withdrawal Motion should be denied where (1) pursuant to 11 U.S.C. § 365, it is within Debtor's business judgment, subject to this Court's approval, to determine whether or not to assume or reject executory contracts; (2) the rejection of an executory contract is a core proceeding the process for which does not exist outside the Bankruptcy Code and should be heard by this Bankruptcy Court; and (3) AHS' so-called claim under 42 U.S.C. § 1983 is wholly without merit

Accordingly, Debtor requests this Court issue an Order finding that the Rejection Motions are core proceedings and further recommend that this case remain before this Bankruptcy Court and for all further relief this Court deems appropriate.

Dated this 4th day of August, 2015.

> Respectfully submitted,
>
> **CROWE & DUNLEVY**
>
> _/sMark A. Craige_ _____
> Mark A. Craige, OBA No. 1992
> Michael R. Pacewicz, OBA No. 18794
> 500 Kennedy Building
> 321 South Boston Avenue
> Tulsa, Oklahoma 74103-3313
> 918.592.9800 Telephone Number
> 918.592.9801 Facsimile Number
> e-mail: mark.craige@crowedunlevy.com
>         michael.pacewicz@crowedunlevy.com
>
> ***Attorneys for Debtor***

CERTIFICATE OF SERVICE

The undersigned certifies on the date signified by the Notice of Electronic Filing herein, and only to the extent the same reflects the following persons will not receive electronic notification hereof, be served the following person by causing a true and correct copy of the above and foregoing pleading with the Notice of Electronic Filing accompanying same, to be placed in the United States Mail, first class mail with postage duly prepaid thereon, as follows:  None.

> __/s/Mark A. Craige_____
> Mark A. Craige